# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs July 23, 2013

## STATE OF TENNESSEE v. WILLIAM JAMAL HARRIS

**Direct Appeal from the Criminal Court for Hamilton County**
**Nos. 256768 & 272910      Don E. Poole, Judge**

---

**No. E2012-01919-CCA-R3-CD - Filed December 2, 2013**

---

The appellant, William Jamal Harris, appeals the trial court's revocation of his probationary sentences, contending that the State failed to adduce sufficient proof that the appellant committed new offenses. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and JEFFREY S. BIVINS, JJ., joined.

Alan R. Webb (at trial) and Lanni Marchant (on appeal), Chattanooga, Tennessee, for the appellant, William Jamal Harris.

Robert E. Cooper, Jr., Attorney General and Reporter; Kyle Hixson, Assistant Attorney General; William H. Cox, III, District Attorney General; and Neal Pinkston, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

On February 7, 2007, the appellant pled guilty to aggravated assault and received an eight-year sentence, which was to be served on probation. Thereafter, on November 12, 2009, he pled guilty to forgery and received a probationary sentence of two years, which was to be served consecutively to the previously imposed eight-year sentence.

On September 28, 2010, the trial court issued a "probationary capias," alleging that the appellant had violated the terms of his probation by being arrested for aggravated assault and aggravated robbery.

At the June 4, 2012 revocation hearing, Richard Ervin, the appellant's probation officer, testified that the appellant was on intensive probation. On September 27, 2010, Ervin filed a probation violation report against the appellant because he had been arrested that day for aggravated robbery and aggravated assault. Additionally, in the report Ervin listed several "technical violations" of the terms of probation, namely that the appellant had tested positive for marijuana, was $110 behind in probation fees, and had seven missed curfew checks. After the positive drug test, the appellant signed an affidavit acknowledging that he had smoked marijuana. Ervin asserted that the appellant was aware of the terms of his probationary sentence. Ervin stated that the appellant had previously violated probation by being convicted of forgery. Ervin said that the appellant had been employed by Pilgrim's Pride and was attending Chattanooga State College.

Wendell Kilgore, the victim, testified that he was incarcerated in a federal prison in Atlanta due to a violation of his probationary sentence for possession of a narcotic with the intent to sell. The victim stated that he did not know the appellant prior to the attack but that he had seen him at court hearings.

The victim said that in April 2010, he was at a gasoline station on the corner of Moore and Shallowford Road. After he spoke with a woman and Michael Thomas, he was "jumped on," beaten, and rendered unconscious by several individuals. The perpetrators took the victim's cellular telephone and approximately $100. The victim could not remember whether his assailants spoke to him, and he did not know why they assaulted him. Someone from the store called the police. The victim was blind in his left eye, he had a concussion, and his shoulder and finger were broken as a result of the assault. The victim stated that before the assault, he did not have trouble with his memory; however, after the assault, he had difficulty remembering certain things. He did not recall seeing the appellant prior to that night. Moreover, because of the number of assailants, he was unable to identify the appellant in a photograph line-up as one of the individuals who attacked him. Nevertheless, the victim was able to identify the appellant as one of the perpetrators after seeing the appellant in court.

The victim stated that he and the appellant spoke in the holding cell at court during a previous court appearance. The appellant told the victim that he did not have to press charges against the appellant, and the victim told the appellant that he understood. The victim explained that he "mean[t] I got other things like on my mind, like me going back to prison and my everyday living."

The victim said that he did not want to testify against the appellant. He said that on March 22 or 23, 2012, one of the appellant's friends, who was in prison with the victim, threatened him with a knife because he thought the victim had testified against the appellant.

On cross-examination, the victim stated that he had not identified the appellant as one of the assailants because he had been told the appellant was involved. However, after seeing the appellant in court, the victim recognized the appellant as someone who walked up while the victim was speaking with Thomas. The victim conceded that he was unable to identify the appellant or any other perpetrator from a photograph lineup. He explained that during the encounter he had been focused on Thomas and did not "know [he] had been ganged by all those people" because he had been knocked unconscious. Later, he awoke at the hospital. He could not definitively say the appellant hit him. The victim acknowledged that he drank one beer that night but denied being intoxicated.

The victim testified that the appellant was present at the gasoline station on the night of the assault. Thereafter, the following colloquy occurred:

> [Defense counsel:] Sir, when you were first asked today if he was there that night, you said you did not know, do you remember that, at the scene? You said you remembered him from these court proceedings, when you first sat down, do you recall being asked that?
>
> [The victim:] I can't remember.

The State then informed the court that it intended to call Investigator Puglise to testify and to play portions of two videotapes, which were different camera angles of the assault.

Chattanooga Police Investigator Matthew Puglise testified that he was assigned to the case after the victim was assaulted. Investigator Puglise spoke with several witnesses, including the victim. Additionally, he retrieved two security videotapes from the manager of the BP station. He watched the videos and saw the appellant participating in the assault. Thereafter, Investigator Puglise charged the appellant with aggravated assault and aggravated robbery.

As the videos were played for the court, Investigator Puglise identified the appellant's white sedan parked at the scene. Defense counsel objected, contending that Investigator Puglise's identification of the appellant's car was based on the videos, which were hearsay evidence. The court sustained the objection "unless [Investigator Puglise] has some more direct knowledge . . . than that."

Investigator Puglise stated that the appellant could be seen on the video, walking in and out of the store. Defense counsel objected to Investigator Puglise's identifying the appellant on the video. Defense counsel explained, "The basis for that objection, Your

Honor, is because [Investigator Puglise] was not present. He sees an image of somebody that looks like – he cannot even authenticate that video."

The court noted that defense counsel's initial objection to the video was not based on authentication. Defense counsel responded that he was also objecting to Investigator Puglise pointing out the appellant on the video because "he can no better identify who's on that video than I can or the Court can." Defense counsel said:

> I think the Court can say it looks like him, or doesn't. I think that's the most – I think the only way, Your Honor, I think, in a nutshell, aside from objecting to the lack of authentication, I think a video has to be corroborated, I really do. And to just say, look, that's him, I just don't think the Court can do that. I don't thing [the State] can do it or the police officer who wasn't there can do it, or anybody, I think there needs to be corroboration.

Defense counsel stated that the victim's testimony did not corroborate the video because his testimony was not specific and because his testimony was contradictory and not credible.

The trial court again noted that defense counsel had not objected to the video on authentication grounds before it was admitted. The court stated, "Well, it seems like to me that your objection was, initially, the only objection I heard, was this witness is not a person that can say that's the [appellant] or anyone else, but the video had been playing ten minutes before that was said." Defense counsel admitted that the objection was "delayed" but maintained that he thought someone would testify to authenticate the video. Defense counsel "concede[d] that the tape is of that BP station on the night that it's alleged to be."

Upon questioning by the State, Investigator Puglise testified that he collected the video from the BP gasoline station. He said that he became familiar with the appellant by watching the video of the assault and by observing photograph stills made from the video by technician Mark Hamilton. Investigator Puglise watched the video and identified the appellant as he walked out of the store.

Defense counsel renewed the objection. The court stated, "I'm going to let him testify and . . . I may let you file a brief in regard to that as to whether this comes in at all."

Investigator Puglise said the video revealed that the appellant reentered the store and touched Thomas. As the State played the video from the second camera angle, Investigator

Puglise explained that the appellant exited the store and walked "out of frame" to the far left toward a green sport utility vehicle. The appellant returned and reentered the store. He exited the store again, stood at a white vehicle, then got into the vehicle. The appellant drove forward a few feet. The victim was on the passenger side, and the appellant exited the vehicle.

Investigator Puglise said that the video depicted the appellant talking to a man in a light-colored shirt. Then the victim was attacked, and the appellant ran around the vehicle to join in the attack. The appellant returned to the driver's side and appeared to stuff something into his pockets. The appellant got into the vehicle and drove away. The victim went into the store.

On cross-examination, Investigator Puglise said that the police initially focused their investigation on Thomas. Investigator Puglise spoke with Thelma Gilliam, who was the victim's aunt. Gilliam said that the victim had been assaulted by Thomas and Gayland Williams; she did not mention the appellant's name.

Investigator Puglise stated that on May 6, 2010, he showed the victim a photograph lineup that included Williams. The victim was unable to identify anyone from the lineup. When shown a second photograph lineup the same day, the victim identified Thomas as one of the perpetrators. Thereafter, the victim was shown a third photograph lineup on May 15, 2010, and he was unable to identify the appellant as a perpetrator.

After Investigator Puglise testified, the hearing was postponed to allow the parties to submit briefs regarding the admissibility of the videotape. At the next hearing, which occurred on June 25, 2012, the court stated that it had listened to the proof and read the briefs. Defense counsel conceded that he could not find any cases to support his position. The court ruled that the video was admissible. Accordingly, the court found by a preponderance of the evidence that the appellant had violated the terms of his probation. The court noted that the appellant acknowledged that he possessed marijuana. Additionally, the court found that the appellant was behind in probation fees and that he had missed seven curfew checks. The court stated that the victim "was a hesitant witness" and was reluctant to testify but that he was credible when he identified the appellant as being present during the assault. The court said the assault on the victim was "vicious." The court said that it had watched the video and that it agreed with Investigator Puglise's assessment that the appellant was one of the perpetrators depicted on the video. Therefore, the court revoked the appellant's probation and ordered him to serve his sentence in confinement.

On appeal, the appellant challenges the trial court's revocation of his probation.

## II. Analysis

Initially, the State contends the appellant's notice of appeal was untimely. Specifically, the State asserts that the appellant, acting pro se, filed a notice of appeal on July 25, 2012. However, at that time, the appellant was represented by trial counsel, who did not file a motion to withdraw until August 15, 2012. The trial court found that it did not have jurisdiction to rule on the motion because the notice of appeal had been filed. This court allowed trial counsel to withdraw, noting that "pro se pleadings in the record indicate the appellant's knowledge of counsel's withdrawal from representation," and appointed appellate counsel.

We note that "in all criminal cases the 'notice of appeal' document is not jurisdictional and the filing of such document may be waived in the interest of justice." Tenn. R. App. P. 4(a). We conclude that regardless of the "appropriateness of the pro se filing of the notice of appeal," we will briefly address the appellant's claims. Gerry Hoover v. State, No. M2011-02413-CCA-R3-PC, 2012 WL 4841608, at *3 (Tenn. Crim. App. at Nashville, Oct. 10, 2012), perm. to appeal denied, (Tenn. Jan. 14, 2013).

Upon finding by a preponderance of the evidence that the appellant has violated the terms of his probation, a trial court is authorized to order an appellant to serve the balance of his original sentence in confinement. See Tenn. Code Ann. §§ 40-35-310 and -311(e); State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). Furthermore, probation revocation rests in the sound discretion of the trial court and will not be overturned by this court absent an abuse of that discretion. State v. Leach, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." State v. Phelps, 329 S.W.3d 436, 443 (Tenn. 2010).

The trial court found that the appellant violated the terms of his probation, in part, by committing new offenses. On appeal, the appellant contests the use of the video during the revocation proceeding. Additionally, he complains that the victim was able to identify the appellant only after seeing him in court, which he asserts was an impermissibly suggestive procedure.

Regardless of the trial court's consideration of the videotape, the trial also found that, based on the testimony of Ervin, the appellant violated probation by possessing marijuana, being behind in probation fees, and missing seven curfew checks. The appellant does not contest these findings. This court has previously concluded that a positive drug screen and an admission of drug use are sufficient to sustain a probation revocation. See State v. Pamela

J. Booker, No. E2012-00809-CCA-R3-CD, 2012 WL 6632817, at *2 (Tenn. Crim. App. at Knoxville, Dec. 19, 2012). Additionally, a "technical violation," such as missing a curfew check or failing to pay fees, is sufficient to support a probation revocation. See State v. Issac Thomas, No. E2011-00565-CCA-R3-CD, 2011 WL 6016916, at *2 (Tenn. Crim. App. at Knoxville, Dec. 5, 2011), perm. to appeal denied, (Tenn. 2012); State v. Herbert Russell Johnson, No. E2003-02580-CCA-R3-CD, 2004 WL 1170030, at *4 (Tenn. Crim. App. at Knoxville, May 26, 2004). Accordingly, we conclude that the trial court properly revoked the appellant's probation.

### III.  Conclusion

In sum, we conclude that the record does not preponderate against the trial court's determination that the appellant violated the terms of his probation. Therefore, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE